Filed 3/20/26  P. v. Armstrong CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JACKIE REGINALD ARMSTRONG,<br><br>Defendant and Appellant. | F088630<br><br>(Super. Ct. No. CF93499102)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Heather Mardel Jones, Judge.

James S. Donnelly-Saalfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Dina Petrushenko and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Appellant Jackie Reginald Armstrong appeals the trial court's denial of his petition for resentencing under Penal Code section 1172.6.[1] After a preliminary hearing, Armstrong pleaded no contest to second degree murder and admitted a personal-use firearm enhancement under section 12022.5, subdivision (a) (§ 12022.5(a)), and on his plea form, he admitted he "used a gun resulting in the unlawful death" of the victim. The trial court concluded Armstrong's admission on the plea form and the firearm enhancement conclusively established he was the actual killer, and rendered him ineligible for resentencing relief at the prima facie stage.

On appeal, Armstrong claims the firearm enhancement did not preclude his eligibility for resentencing, and the petition should have advanced to an evidentiary hearing. Although the Attorney General agrees Armstrong's admission of the firearm enhancement, standing alone, did not conclusively establish that Armstrong was convicted as the actual killer, the trial court's ruling was nonetheless correct because the preliminary hearing transcript, in conjunction with the admitted personal-use firearm enhancement, conclusively established Armstrong's conviction as the actual killer. Armstrong contends the preliminary hearing testimony should not be considered because it was not considered below, and it was admitted under section 872, subdivision (b) (§ 872(b)).

Assuming, without deciding, the preliminary hearing testimony admitted under section 872(b) may be considered at the prima facie stage, it does not conclusively establish Armstrong was necessarily convicted by plea under a still-valid theory. The record of conviction reflects a factual dispute as to the basis of Armstrong's conviction that must be resolved at an evidentiary hearing. We reverse the trial court's ruling, and remand for an evidentiary hearing.

---

[1] All further statutory references are to the Penal Code unless indicated otherwise.

# FACTUAL BACKGROUND

In October 1993, a criminal complaint charged Armstrong and two codefendants (Garrett and Richardson) with the murder of Mark Hernandez and attempted robbery. Attached to the murder charge as to all defendants was a felony murder special circumstance allegation under section 190.2, former subdivision (a)(17)(i), and a personal-use firearm enhancement under section 12022.5, subdivision (a), was alleged as to the murder and attempted robbery charges. Richardson was also charged with a drug possession offense.

At a preliminary hearing, the only witnesses were Fresno Police Officers Zavala and Manfredi. Officer Zavala testified he went to Mark Hernandez's apartment late in the evening of September 29, 1993, to investigate, and he found what looked like a bullet hole in the apartment's door near the locking mechanism for the deadbolt, about three to four feet above the ground. Zavala saw a body lying on the floor (later identified as Hernandez) with what appeared to be blood on his face. A pathologist later concluded Mark Hernandez was killed due to a gunshot wound to the head.

During his investigation of Hernandez's death, Zavala interviewed Rufus Levels. Levels told Zavala that on the night of Hernandez's murder, he, Garrett, Richardson and Armstrong met at Richardson's residence, and then Richardson drove them to Lonely Boy's residence where they discussed robbing "dope dealers." Levels said Richardson, Garrett, and Armstrong armed themselves before they left Richardson's residence, but notably no testimony was elicited as to whether Levels said he was (or was not) also armed. Levels said Richardson had a shotgun, Armstrong had a black nine-millimeter handgun, and Garrett had a .45-caliber handgun. After the robbery discussion at Lonely Boy's, Richardson drove the group to an apartment building, and he explained to them there was a Mexican man in one of the apartments visible from the car who was selling narcotics; Richardson and Armstrong had been there before.

3.

Together, the four decided that Armstrong and Levels would get out of the car and rob the occupant of the apartment for any available narcotics, money or property. Levels told Zavala that he and Armstrong walked up to the apartment, Armstrong knocked on the door, and the occupant answered, opening the door a few inches. Armstrong tried to shove his way into the apartment, but the occupant pushed back. Levels told Zavala Armstrong then pointed his gun at the door and fired one time, after which Armstrong and Levels walked back to Richardson's vehicle. Upon returning to the car, Levels heard Armstrong tell Richardson "'the fool wouldn't let him in.'" When the four left the area in the car, they were chased by the police. They went to Richardson's residence, hid the guns, and went to sleep. Levels said "[s]ome [guns] were hidden in Mr. Richardson's sister's room and others were hidden throughout the residence." All four were arrested the next morning near Richardson's residence.

Zavala also testified that a percipient witness reported seeing six people running from the apartment after the shot was fired, and the witness saw additional people running from the carport area. Another percipient witness was sitting in a car parked near the stairway leading to Hernandez's apartment on the night of the shooting. This witness reported seeing two Black males walk up to Hernandez's apartment, he saw the front door of the apartment open about 12 inches and then close, and then he heard a shot fired. He then saw the two Black males get into a parked red vehicle.

Manfredi testified he responded to Richardson's apartment shortly after midnight on September 30, 1993, and encountered Garrett, Richardson, Levels and Armstrong. On a search of Richardson's residence, four weapons were found, including a stainless steel shotgun with a pistol grip; a .22-caliber high standard pistol; a Glock .45-caliber; and a nine-millimeter blue steel pistol.

The defense presented no evidence, and the trial court held Armstrong, Garrett, and Richardson to answer for murder with the special circumstance allegation; the court held Armstrong to answer for the personal-use firearm enhancement, but it did not hold

4.

Garrett or Richardson to answer for that enhancement; finding insufficient evidence of corpus delicti as to attempted robbery, the court struck count 2; and the court held Richardson to answer for the drug charge.

Following the preliminary hearing, an information charged Armstrong, Richardson and Garrett with murder, plus a felony-murder special circumstance; a personal-use firearm enhancement as to Armstrong, and a personal-arming enhancement as to Garrett and Richardson; and a drug charge against Richardson.

Armstrong later pleaded no contest to second degree murder and admitted a section 12022.5(a) enhancement that he had personally used a firearm in the commission of a felony or attempted felony. In exchange, the People agreed to strike the special circumstance allegation against Armstrong and dismiss the charges against Armstrong's codefendants and the juvenile proceedings against Rufus Levels. On line 14a of the plea form, prompting a response to the facts upon which the plea was based, Armstrong wrote that he "used a gun resulting in the unlawful death of Mark Hernandez." Armstrong was sentenced to 15 years to life for the murder, plus four years for the firearm enhancement.

In 2023, Armstrong sought resentencing relief under section 1172.6, and filed a form petition with checked boxes indicating the three requirements for relief under section 1172.6, subdivision (a), were satisfied, including that Armstrong could not presently be convicted of murder because of changes to sections 188 and 189. Armstrong requested and was appointed counsel. At a status conference in November 2023, the prosecutor asked whether the trial court had the actual court file from Armstrong's 1993 case, specifying an interest in reviewing the change of plea form, the change of plea transcript, and the preliminary hearing transcript. The court indicated it would "take a look at all of those."

In January 2024, the parties appeared for another status conference. Counsel agreed they had decided at the last status conference the court would determine if it had retained the physical file for both parties to review. The court confirmed the file was

received from the archives, and it included two days of preliminary hearing transcripts reported by two different court reporters. At another status conference in February 2024, Armstrong's counsel indicated the court had allowed them access to the file at the last hearing, and the attorneys had flagged documents they wanted copied. Those documents were sent to defense counsel a week prior, and the attorneys needed a chance to discuss them.

In March 2024, the People filed a brief in opposition to the petition, arguing Armstrong was ineligible for resentencing relief as a matter of law because his statement he had "'used a gun resulting in the unlawful death of Mark Hernandez'" on the plea form conclusively established he was necessarily convicted as the actual killer. In May 2024, Armstrong filed a response to the People's opposition, arguing he had not admitted acting with malice, deliberation, or premeditation, nor had he admitted being the actual killer in unequivocal terms. As a result, Armstrong maintained, the plea form admission did not constitute a fact refuting his petition allegations.

By written order in July 2024, the trial court denied the petition at the prima facie stage. The court concluded Armstrong was "not convicted based on felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, … [because Armstrong] was the actual killer who 'personally' used a firearm to murder the victim." The court reasoned as follows:

"Evidenced by his own plea form, [Armstrong] himself murdered victim Hernandez, and in so acting, [Armstrong] 'personally' used a 'gun.' [Armstrong's] factual basis admission that he personally used a firearm when he murdered the victim provides the facts necessary to sustain his conviction. (*People v. Romero* (2022) 80 Cal.App.5th 145, 152–153.)

"Contrary to [Armstrong's] contention that his admissions did not foreclose the 'possibility' that he may have been liable via a felony-murder theory or another theory

under which malice was imputed to him, his admission to the 'personal use' of the firearm in the commission of the murder forecloses such a possibility. [Armstrong] was convicted as the direct perpetrator of the murder, accomplished by his personal use of a firearm. As such, [Armstrong] is ineligible for resentencing relief as a matter of law.

"Further, with regard to the element pursuant to Penal Code § 1172.6[,subdivision ](a)(3), the record of conviction demonstrates, beyond a reasonable doubt, that [Armstrong] personally acted with the intent to kill and was, and continues to be, guilty of murder, including under California law as amended by the changes to §§ 188 or 189 made effective January 1, 2019." Armstrong appeals.

## DISCUSSION

### I. Legal Principles and Standard of Review

Pursuant to Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), the Legislature modified "accomplice liability for murder and the felony-murder rule." (*People v. Gentile* (2020) 10 Cal.5th 830, 841.) The modification "eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony-murder rule." (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) The changes were meant "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The changes did not, however, affect murder liability for actual killers. (*People v. Mares* (2024) 99 Cal.App.5th 1158, 1166 (*Mares*).) Senate Bill 1437 also created a procedure under section 1172.6 (former § 1170.95) to provide retroactive relief for those convicted of murder who could not *presently* be convicted under the law as amended. (*People v. Arellano* (2024) 16 Cal.5th 457, 468.)

Section 1172.6 presently provides that "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a

7.

crime, … may file a petition with the court … to have the petitioner's murder[] … conviction vacated and to be resentenced" when three conditions apply (*id.*, subd. (a)): (1) the charging document allowed the prosecution to "proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" (*id.*, subd. (a)(1)); (2) the petitioner was convicted of murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder (*id.*, subd. (a)(2)); and (3) the "petitioner could not presently be convicted of murder … because of changes to Section 188 or 189 made effective January 1, 2019" (*id.*, subd. (a)(3)).

"A petition that includes '[a] declaration by petitioner that the petitioner is eligible for relief …, based on all the requirements of subdivision (a),' the case number and year of the petitioner's conviction, and whether the petitioner seeks counsel is facially sufficient and entitles the petitioner to counsel. (§ 1172.6, subd. (b); see … *Lewis*[, *supra*,] 11 Cal.5th [at p.] 957 .…) A facially sufficient petition also triggers the People's duty to submit a response and the petitioner's right to submit a reply on the question of whether a prima facie case for relief exists. (§ 1172.6, subd. (c).) 'After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief.' (*Ibid.*)" (*People v. Patton* (2025) 17 Cal.5th 549, 558–559 (*Patton*).)

In assessing whether the petitioner has made a prima facie showing he is entitled to relief, the court may consult the record of conviction to "inform" its inquiry, but that inquiry "is limited" as "the 'prima facie bar was intentionally and correctly set very low.'" (*Lewis, supra*, 11 Cal.5th at pp. 971, 972.) At this stage, "'"the court takes [the] petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved."'" (*Id.* at p. 971.) "'[A] court should not reject the petitioner's factual allegations

8.

on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Ibid.*) Further, "[i]n reviewing any part of the record of conviction" at the prima facie stage, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id*. at p. 972; accord, *Patton, supra*, 17 Cal.5th at p. 563.) The record of conviction includes a preliminary hearing transcript preceding a guilty plea. (*Patton, supra*, at p. 568.)

"If the 'petitioner makes a prima facie showing,' then the trial court issues an order to show cause and holds 'a hearing to determine whether to vacate the … conviction and to recall the sentence and resentence the petitioner.' ([§ 1172.6], subds. (c), (d)(1).) At this hearing, evidence may be presented and 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under' current law. (*Id*., subd. (d)(3); see [*People v.*] *Strong* [(2022)] 13 Cal.5th [698,] 709.)" (*Patton, supra*, 17 Cal.5th at p. 559.)

## II.     Armstrong Established a Prima Facie Case

To be eligible for relief under section 1172.6, the petitioner must have been convicted under a now-invalid theory. (*Id.*, subd. (a).) Where undisputed facts in the record of conviction demonstrate the petitioner was necessarily convicted under a still-valid theory, the petitioner is ineligible for relief as a matter of law, and the petition can be dismissed at the prima facie stage. (*Patton, supra*, 17 Cal.5th at p. 565; *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [as the petitioner was the "only participant in the killing," he was not convicted under an invalid theory and could not have made a prima facie showing of relief].)) Here, the trial court concluded undisputed facts in the record of conviction—namely, the plea form stipulation and firearm enhancement admission— show Armstrong was necessarily convicted as an actual killer.

9.

### A. Plea Stipulation and Enhancement Admission Do Not Conclusively Establish Conviction Under a Still-valid Theory

Armstrong argues, and the Attorney General concedes, that neither Armstrong's admission to the "personal use" of a firearm under section 12022.5(a), nor his stipulation on the plea form that he "'used a gun resulting in the unlawful death'" of the victim—either by themselves or together—necessarily establish he was convicted by plea as an actual killer. We agree with the parties.

At the time of Hernandez's murder in 1993, section 12022.5, former section (a), as it does currently, provided for an additional term of imprisonment for "any person who personally uses a firearm in the commission or attempted commission of a felony …." (Stats. 1990, ch. 41, § 3.) Yet, an admission to personal use of a firearm during the commission or attempted commission of a felony did not then, nor does it now, amount to an admission the firearm was *discharged* or that the user personally killed with the gun and, thus, by itself, is not an admission to being an actual killer. (See *People v. Chambers* (1972) 7 Cal.3d 666, 672, 673 ["Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies"; pointing a gun at the victim and demanding money was personal use under § 12022.5]; accord, *People v. Bland* (1995) 10 Cal.4th 991, 997; *People v. Cooper* (2020) 54 Cal.App.5th 106, 125 [even if personal-use enhancement were found true, it does not establish ineligibility for resentencing relief under § 1172.6]; see also § 1203.06, subd. (c)(2); CALCRIM No. 3146 [personal use of a firearm under § 12022.5 includes displaying weapon in menacing manner, hitting someone with the weapon, or firing the weapon].)

Similarly, Armstrong's stipulation in his plea form was not an admission to being the actual killer—the stipulation stated only that Armstrong "used" a gun that "resulted" in the death of Mark Hernandez. The word "resulted" is not a term of art in this context,

nor does it necessarily imply Armstrong personally killed the victim. Although the trial court relied on *People v. Romero* (2022) 80 Cal.App.5th 145, the stipulation in that case is not sufficiently analogous. In *Romero*, the petitioner pleaded no contest to first degree murder after he was paid to drive a codefendant to the victim's home where the codefendant shot and killed the victim. As part of his plea, the petitioner also admitted he acted intentionally, deliberately and with premeditation, which definitively established personal and actual malice. (*Id.* at pp. 149, 153.) This admission unequivocally and necessarily indicated the petitioner was convicted under a still-valid theory under the amended felony-murder rule. (*Id.* at p. 151.) Using a gun that "resulted" in the death of the victim is equivocal and, standing alone, it does not necessarily mean Armstrong personally killed the victim.

### B.     Preliminary Hearing Testimony

Notwithstanding the Attorney General's concession regarding the plea stipulation and firearm enhancement, he argues the trial court implicitly considered the preliminary hearing transcripts. He maintains preliminary hearing testimony along with the firearm enhancement and plea form admission show undisputed facts that Armstrong was necessarily convicted by plea as the actual killer—a still-valid theory of felony murder. (§ 189, subd. (e)(1).) As a result, the Attorney General maintains, Armstrong is ineligible for resentencing under section 1172.6 as a matter of law.

Armstrong responds that any use of the preliminary hearing transcripts on appeal is improper and unfair: the transcripts were not attached to the prosecution's opposition to Armstrong's petition nor a part of the prosecution's argument and, thus, Armstrong had no opportunity to respond to reliance on it; in addition, there is no indication the trial court considered the transcripts in making its ruling. Moreover, Armstrong argues, the preliminary hearing testimony the Attorney General relies on is hearsay offered by a

11.

police officer and admitted under section 872(b).[2]  Relying on *People v. Flores* (2022) 76 Cal.App.5th 974, 988 (*Flores*), disapproved on another ground in *Patton, supra*, 17 8Cal.5th at page 569, footnote 12, Armstrong maintains that because this testimony cannot be considered at a section 1172.6, subdivision (d)(3) (§ 1172.6(d)(3)) evidentiary hearing, it cannot be considered at the prima facie stage.

The decisional law regarding section 1172.6 (and its predecessor § 1170.95) has continued to develop since the statute's enactment.  A line of cases, including *Flores*, has held that because section 1172.6(d)(3) prohibits the admission of factual summaries from prior appellate opinions at the evidentiary hearing, those summaries cannot be considered at the prima facie stage.  (*Flores, supra*, 76 Cal.App.5th at p. 988; *People v. Lee* (2023) 95 Cal.App.5th 1164, 1183; *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238.) Specifically, our court reasoned in *Flores* that "[i]f such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage."  (*Flores, supra*, at p. 988, fn. omitted.)

Our colleagues in the Second District Court of Appeal, Division Eight, recently declined to apply that reasoning with respect to considering section 872(b) preliminary hearing testimony at the prima facie stage.  (*People v. Rodriguez* (2026) 117 Cal.App.5th 1179, 1193–1196 [2026 Cal.App. Lexis 18, *15–24] (*Rodriguez*).)  Although *Patton* declined to address the use of section 872(b) preliminary hearing testimony at the prima facie stage (*Patton, supra*, 17 Cal.5th at p. 557, fn. 2), *Rodriguez* concluded that, pursuant to *Patton*, because the preliminary hearing transcript is consulted at the prima facie stage only for its issue-framing role, it "does not matter whether evidence was admitted at the

---

[2]    Section 872(b) provides that at the preliminary hearing, a finding of probable cause may be based in whole or in part upon the sworn testimony of a qualified law enforcement officer relating hearsay statements of declarants.

preliminary hearing under section 872, subdivision (b) or under another provision of the Evidence Code. Whatever the legal basis for the admission of the evidence, the value of the preliminary transcript as an issue-framing device is unchanged." (*Rodriguez, supra*, at p. 1193 [2026 Cal.App. Lexis 18, *17–18.)

Notwithstanding that preliminary hearing testimony admitted under section 872(b) is not admissible at a section 1172.6(d)(3) evidentiary hearing, *Rodriguez* observed the evidentiary hearing serves a different purpose from the prima facie inquiry under section 1172.6, subdivision (c)—no factfinding or weighing of the evidence occurs, and "the court is simply referring to the record of conviction to frame the issues." (*Rodriguez, supra*, 117 Cal.App.5th at p. 1194 [2026 Cal.App. Lexis 18, *19], citing *Patton, supra*, 17 Cal.5th at pp. 566–567, 569.) Further, although the Legislature amended section 1172.6(d)(3) to prohibit consideration of section 872(b) preliminary hearing testimony at an evidentiary hearing, it had not similarly foreclosed its use at the prima facie stage. (*Rodriguez, supra*, at pp. 1193–1195 [2026 Cal.App. Lexis 18, *19–20].)

In the circumstances of this case, however, we need not resolve whether *Patton*'s reasoning should be extended, as it was in *Rodriguez*, to permit consideration of section 872(b) preliminary hearing testimony at the prima facie stage. As Armstrong argues, even assuming that such testimony may be considered, the preliminary hearing testimony here does not conclusively establish Armstrong was necessarily convicted as the actual killer. Instead, it contains specific facts, coupled with Armstrong's conclusory petition allegations, that establish a factual dispute as to whether he was convicted under a still-valid theory—i.e., as the actual killer.[3]

---

[3] In light of our conclusion an evidentiary hearing is warranted even considering the preliminary hearing testimony, we do not address Armstrong's argument the preliminary hearing testimony was not considered below and whether that precludes its consideration on appeal.

13.

One of the threshold criteria for resentencing eligibility under section 1172.6 is being a person convicted under a now-invalid theory. (§ 1172.6, subd. (a)(3); see, e.g., *People v. Delgadillo, supra*, 14 Cal.5th at p. 233 [as the petitioner was the "only participant in the killing," he was not convicted under an invalid theory and could not have made a prima facie showing of relief].) "A dispute regarding the basis of a conviction might arise if, for instance, a petitioner points to specific facts that identify someone else as the direct perpetrator." (*Patton, supra*, 17 Cal.5th at p. 567.) Unlike *Patton* and other pre-*Patton* cases where conclusory allegations in the petition were conclusively refuted by preliminary hearing testimony at the prima facie stage, the preliminary hearing testimony here indicates Armstrong was *not* a lone actor, and leaves open the possibility he may not have been the direct perpetrator. (Cf. *id.,* at p. 556; *People v. Pickett* (2023) 93 Cal.App.5th 982, 986 ["There was no evidence suggesting that anyone other than Pickett was involved in [the victim's] death."]; *Mares, supra*, 99 Cal.App.5th at p. 1162 ["No evidence suggested anyone other than Mares physically fought with [the victim] or stabbed him."].)

The information charged Armstrong, Garrett and Richardson together for murder. According to the preliminary hearing, Armstrong and three confederates met, armed themselves, discussed robbing a drug dealer, and then drove to Hernandez's apartment. While Armstrong and Levels approached the apartment for the robbery, Garrett and Richardson stayed in the car. There was no testimony about whether Levels was (or was not) armed—Zavala testified only that Levels was asked if the *other* three had guns. When Levels told Zavala where they hid their guns after the crime, the words used indicate they hid more than three guns, and circumstantially suggested they were all armed for the robbery: Zavala testified Levels said "[s]ome [guns] were hidden in Mr. Richardson's sister's room and others were hidden throughout the residence." A search of Richardson's apartment after the shooting turned up *four* firearms, corroborating that Levels may also have been armed for the robbery and could have been

the shooter.[4] One witness saw six people running away from the apartment after the shooting, suggesting it is possible others joined Levels and Armstrong at Hernandez's door, including Garrett and Richardson who were also armed.

Although the prosecutor was pursuing a theory that Armstrong was the shooter of the single shot that killed Hernandez, Zavala's testimony placed Levels at Hernandez's door with Armstrong when the lethal shot was fired, and there was no testimony that Levels did *not* have a gun, too—indeed, circumstantial evidence suggests Levels was armed. Although Levels told Zavala that Armstrong fired his gun at Hernandez's door, no other evidence foreclosed the possibility that Levels (or another accomplice) could have fired the shot at Hernandez and killed him. Under these circumstances, Armstrong's conclusory eligibility allegations in his petition, which implicitly and necessarily include an assertion he was not the actual killer, are sufficient to create a disputed issue of fact about who shot and killed Hernandez. (*Patton, supra*, 17 Cal.5th at p. 560, fn. 4 [noting the People's agreement in an answer to an amicus brief that ""if the record contains any indication [the petitioner] had an accomplice who may have been the killer, a prima facie case ordinarily would be readily established, even by conclusory assertions in a form petition"""]; see *Mares, supra*, 99 Cal.App.5th at p. 1166 [Sen. Bill 1437 did not affect actual killer theories of murder liability].)

Under the felony-murder doctrine then applicable, Armstrong was liable for first degree murder whether or not he was the actual killer because the murder occurred during the course of an attempted robbery, and the prosecutor could have pursued that theory even if a jury found Levels (or one of the other confederates) was the shooter. (See *People v. Cavitt* (2004) 33 Cal.4th 187, 197 [Under former § 189, "'[o]nce a person has embarked upon a course of conduct for one of the enumerated felonious purposes, he

---

[4] There is no information about the juvenile proceedings against Levels, which the prosecutor confirmed were ongoing at the time of the preliminary hearing, or whether Levels was charged with any type of firearm enhancement.

comes directly within a clear legislative warning—if death results from his commission of that felony it will be first degree murder, regardless of the circumstances'"].)

Additionally, the prosecutor could have pursued the felony-murder special circumstance on the theory Armstrong was a major participant who acted with reckless indifference even if he was not the killer. (See § 190.2, former subd. (d); Prop. 115, § 10, Crime Victims Justice Reform Act, adopted by the California voters in the June 5, 1990, Primary Elec.) Finally, because there is evidence Armstrong had a gun for purposes of the attempted robbery, and there is circumstantial evidence Armstrong had the gun out when he approached Hernandez's apartment, a personal-use enhancement could have been pursued regardless of whether Armstrong was the shooter. Although Armstrong offered no evidence at the preliminary hearing to rebut Level's statements to Zavala that he was the shooter, that defense theory would not have undercut the murder charge, the special circumstance allegation, or the firearm enhancement. Coupled with Armstrong's conclusory petition allegations implicitly asserting he was not the actual killer, and the facts showing a nonhypothetical, nonspeculative possibility that Levels or another accomplice *may* have killed Hernandez, the record does not conclusively refute that Armstrong was necessarily convicted as the actual killer. (Cf. *Patton, supra*, 17 Cal.5th at pp. 560, fn. 4, 567.)

The Attorney General relies on *People v. Garrison* (2021) 73 Cal.App.5th 735 (*Garrison*) in arguing the preliminary hearing testimony in combination with the personal-use admission and stipulation extinguish any factual dispute that Armstrong was necessarily convicted as the actual killer. Yet *Garrison* is distinguishable and insufficiently analogous. There, Garrison and his brother Rowe robbed a couple (Otto and Verna) in their home. (*Garrison, supra*, at pp. 739–740.) One of the brothers, who was masked, wrestled a gun away from Verna, pushed her down and walked to the front room; at the same time the gun was wrestled away, Verna heard her husband fighting with someone else in the front room. (*Id.* at p. 739.) About 30 seconds later, Verna

16.

heard two gunshots, and later her husband was found dead, killed by a bullet to the chest. (*Ibid.*)  Garrison pleaded guilty to murder and admitted a personal-use firearm enhancement under section 12022.5, subdivision (a).  (*Garrison, supra*, at p. 740.)

Subsequently, Garrison filed a resentencing petition under section 1172.6, and checked a box stating he was not the actual killer.  (*Garrison, supra*, 73 Cal.App.5th at p. 740.)  The matter advanced to an evidentiary hearing.  Based on the preliminary hearing transcript, the minute order showing Garrison's plea to murder and admission under section 12022.5, and a transcript of the original sentencing hearing, the prosecutor argued Garrison was the actual killer and ineligible for relief as a matter of law.  The trial court concurred and denied the petition.  (*Garrison, supra*, at p. 741.)

The appellate court affirmed, agreeing that Garrison was ineligible as a matter of law because he was necessarily convicted as the actual killer—a still-valid theory of felony murder under section 189, subdivision (e)(1).  The court explained the evidence established that only one person was the shooter, and that "the only use of the handgun was to shoot Otto."  (*Garrison, supra*, 73 Cal.App.5th at p. 747.)  As a result, when Garrison admitted he personally used a firearm, the "*only* conclusion consistent with [his] admission" was that he was the "actual killer."  (*Ibid.*)  In reaching this conclusion, *Garrison* relied on *People v. Jones* (2003) 30 Cal.4th 1084, which explained that a finding a defendant personally used a firearm does not in itself prove a defendant is the actual killer, but if the record shows only one person displayed and used a gun and "'[a]ll evidence points to [the] defendant, not the second robber, as the one with the gun,' the true finding on a personal use enhancement demonstrates that the defendant was the actual killer."  (*Garrison, supra*, at pp. 743–744, quoting *Jones, supra*, at p. 1120.)  *Garrison* reasoned that the facts showed the only use of Verna's handgun was to kill Otto—"[t]here was no evidence that anyone used the gun just for intimidation."  (*Garrison, supra*, at p. 744.)  Therefore, Garrison's admission to the use of a handgun in the course of the murder was necessarily an admission he was the actual shooter.  (*Ibid.*)

Here, the preliminary hearing testimony suggests Armstrong already had the gun out for purposes of the robbery when he knocked on Hernandez's door. According to Levels and another percipient witness, Hernandez opened his door a few inches, but then tried to close it when Armstrong tried to push his way inside—suggesting, circumstantially, Hernandez saw Armstrong's gun. There is some evidence that could support a conclusion Armstrong displayed his gun for purposes of effectuating the robbery and getting inside Hernandez's apartment. Unlike *Garrison*, where there were no facts that anyone used the gun for any other purpose, we are unable to conclude the evidence shows the only use of a gun here was to shoot Hernandez. Armstrong could have used his gun *only* for purposes of the attempted robbery.

As there are circumstantial facts suggesting Levels was armed and it is possible he could have been the shooter, and because there is evidence Armstrong may have used a gun only for purposes of the attempted robbery, there is a factual dispute as to whether Armstrong was convicted by plea as an actual killer. (See *Patton, supra*, 17 Cal.5th at p. 567 [dispute regarding basis of conviction might arise if the petitioner points to specific facts that identify someone else as the direct perpetrator, which may come from the record itself].)

In sum, because there is a disputed issue of fact about whether Armstrong was necessarily convicted as an actual killer, he is not ineligible for resentencing as a matter of law on that ground. Instead, we conclude Armstrong has made a prima facie showing. He was charged generically with murder, which allowed the prosecution to proceed on an invalid theory (§ 1172.6, subd. (a)(1)); he accepted a plea offer in lieu of a trial at which he could have been convicted of murder (*id.*, subd. (a)(2)); and the record discloses a factual dispute about whether he was the actual killer, which does not undercut his allegation he could not presently be convicted of murder "because of" changes to the law under Senate Bill 1437 (§ 1172.6, subd. (a)(3)); cf. *Mares, supra*, 99 Cal.App.5th at pp. 1166–1167 [lack of facts pointing to another perpetrator who could have been the

18.

actual killer fatally undercut petition allegation he could not presently be convicted of murder "'because of'" changes in the law—convicted as an actual killer, he *could* presently be convicted of murder under § 189, subd. (e)(1)]).

**DISPOSITION**

The order denying Armstrong's petition under section 1172.6 is reversed, and the matter is remanded for the trial court to issue an order to show cause and to hold an evidentiary hearing under section 1172.6(d)(3).

MEEHAN, J.

WE CONCUR:

DETJEN, Acting P. J.

DESANTOS, J.